**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (SBN 167688)
hbates@cbplaw.com
Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
Courtney E. Ross (*pro hac vice*)
cross@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Ian R. Bensberg (*pro hac vice*)
ibensberg@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs*

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Douglas I. Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

**WEIL, GOTSHAL & MANGES LLP**
David R. Singh (Bar No. 300840)
david.singh@weil.com
Amy Tu Quyen Le (Bar No. 341925)
amy.le@weil.com
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

**WEIL, GOTSHAL & MANGES LLP**
David Yohai (*pro hac vice*)
david.yohai@weil.com
Blake Steinberg (*pro hac vice*)
blake.steinberg@weil.com
767 Fifth Avenue
New York, NY 10153
Telephone:(212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN RE PHILO PRIVACY LITIGATION | Case No.  3:22-cv-04296-HSG |
|---|---|
| | **STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY DOCUMENTS** |

**I.**     **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**II.**     **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**III.**     **LIAISON**

The parties have identified liaisons to each other who will be knowledgeable about and are responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**IV.**     **PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially-relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

1.     Only ESI created or received between July 25, 2020 and the present relevant to the allegations of Plaintiffs' Consolidated Complaint (ECF No. 43) or to any operative complaint – or any defense to those allegations – will be preserved, except the parties agree to preserve without temporal restriction documents concerning or related to: (1) Philo's installation, account creation, and/or configuration of the Pixel via any applicable online dashboard, including any documents received from Meta, agreements with Meta, or communications with Meta about the same; (2) the named Plaintiffs' creation and use of their Philo account, the devices the named Plaintiffs used to access their Philo account, including any potentially relevant configurations,

and their use of Facebook/Meta relevant to the claims or defenses in this litigation, including any consents and privacy settings; and (3) any corporate policy relating to Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") compliance; and (4) all documents concerning obtaining consent to disclose data potentially subject to the VPPA.

2.      Examples of data the Parties agree not to preserve are:

a.      Digital voicemail;

b.      Automatically saved versions of documents;

c.      Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

d.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

e.      Structural files not material to individual file contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);

f.      Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source.  The parties agree that all ESI relating to Plaintiffs' usage of any device used to access Philo or Facebook (including, without limitation, any operating system version history, any privacy and security settings, any privacy reports, and any Facebook version history, consents, permissions, settings, and "Off-Facebook activity" reports, whether stored on a device, in an app, or otherwise), and that any device that Plaintiffs used to access Philo or Facebook will be preserved.

g.      Dynamic fields of databases or log files that are not retained in the usual course of business; and

h.      Data in metadata fields that are frequently updated automatically, such as last opened dates.

**V.**   **SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

If a party intends to use search terms or other limiting parameters, or to use advanced search and retrieval technologies, such as predictive coding or other technology assisted review ("TAR") to identify documents for production in response to a discovery request, the party shall notify the propounding party of that intent describe the limiting parameters, including the search terms that will be used, as well as details of the software, techniques, or technology and work flow process for any advanced search and retrieval technologies, such as predictive coding or TAR. The parties may add, change, or supplement these search terms or other limiting parameters upon agreement or upon relief from the Court.

**VI.**   **PRODUCTION FORMATS**

The Parties agree to produce documents in the formats set forth in Appendix 1 and 2 hereto. If particular documents warrant a different format, parties will cooperate to arrange for the mutually acceptable production of such documents. Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No party shall unreasonably object to any such variance. The parties agree not to degrade the searchability of documents as part of the document production process.

**VII.**   **DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. The

1  parties shall follow the requirements of Federal Rule of Civil Procedure 26(b)(5)(B) in the event

2  of such production, as well as the applicable terms of the parties' Proposed Stipulated Protective

3  Order.

4      To the extent that a party reasonably determines that one or more responsive documents

5  are not discoverable or a portion of a document needs to be redacted because it is subject to the

6  attorney-client communication privilege or work product doctrine, or otherwise not discoverable

7  on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a

8  "Privilege"), the party shall produce a log treating each document withheld or redacted for

9  privilege from that production separately that sets forth: (a) the nature of the privilege(s) or other

10  protection claimed; (b) all persons, by name, title and/or job position, making or receiving the

11  privileged or protected communication or document (with respect to e-mail threads, the

12  author/addresser, addressee(s) and recipients of only the top e-mail in the chain will be set forth in

13  the author/addressee, addressee(s) and recipient fields of the log); (c) the date of the

14  communication or document; and (d) a description of the general subject matter contained in the

15  communication or document and the type of communication or document (e.g., letter,

16  memorandum, handwritten notes) sufficient to allow the receiving party to assess the claimed

17  Privilege.

18      Communications involving counsel that post-date the filing of the *Newlands* complaint

19  (July 25, 2022) need not be placed on a privilege log.

20  **VIII.**  **HARD COPY DOCUMENT STORAGE**

21      During the pendency of this litigation, the parties shall make reasonable efforts to preserve

22  the originals of all hard copy documents as to which there may be issues of legibility of all or any

23  part of the production copy. Each party reserves the right to request to inspect such original

24  documents of the opposing party or parties, which request shall not be unreasonably denied. If

25  such request to inspect is denied, the party may seek relief from the Court.

26  **IX.**  **MODIFICATION**

27      This Order may be modified by a stipulation of the Parties or by the Court for good cause

28  shown.

**X.**      **MISCELLANEOUS**

Nothing in this Order shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

## APPENDIX 1
## PRODUCTION DELIVERY REQUIREMENTS

**I.      GENERAL PRODUCTION PROVISIONS**

The parties have agreed that ESI should be produced as TIFF images and in Native format where applicable with accompanying data and image load files.

**A.      TIFF Image Files.**

The parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

**B.      Text Files.**

Each Document produced under this Order shall be accompanied by a single, multipage file with related OCR and/or extracted text for that item. Each text file shall be named to use the Bates number of the first page of the production item. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable. The .DAT load file shall include a link to the corresponding text file.

**C.      OCR Text File.**

The parties will provide searchable OCR text of any paper Documents, including spreadsheets maintained in paper form that were scanned or otherwise converted into electronic form prior to the time the Documents are first produced in this litigation. The parties acknowledge, however, that not all Documents such as photographs and documents with handwritten notes may lend themselves to the generation of accurate OCR. **Extracted Text Files from ESI.**

The parties shall extract the text of each ESI item directly from the ESI native file.

**D.      OCR Text for Redacted Documents.**

The parties will provide searchable OCR text for any redacted files, except for portions that are redacted.

**E.     Bates Numbering.**

1.      Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production, in addition to any alphabetic characters preceding these digits; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party knowingly skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

2.      The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the receiving party believes that a Bates number obscures the content of a Document, then the receiving party may request that the Document be produced with the Bates number in a different position.

**F.     Re-Production of Prior or Other Litigation Documents.**

Where a requesting party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this litigation, the producing party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set. For any such re-production in accordance with this Paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

**G.     Parent-Child Relationships.**

Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a party is producing an email with attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.  For purposes of this paragraph, email wrappers generated automatically as part of the email journaling process will not be treated as parent emails and need not be produced.

**H.      Color Documents.**

If a receiving party reasonably believes it is necessary to view an original ESI Document that contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to documents that are produced as TIFF images.

**I.      Confidentiality Designations.**

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image.  If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the Document. For each document that is marked confidential, a Confidentiality field

1   will be populated with the word "Confidential" or other confidentiality designation in the .dat file.

2   If there is any inconsistency between the designation in the Confidentiality field and the

3   designation stamped on the face of the document, then the higher, more protective confidentiality

4   designation shall control until inconsistencies are addressed by the parties.  Also, any documents

5   marked Confidential must be handled in accordance with the Protective Order entered in this

6   case.

7   **II.**      **PRODUCTION OF HARD COPY DOCUMENTS**

8          All hard copy Documents that are scanned will be produced in electronic form. Where

9   necessary and practicable, hard copy Documents in color will be scanned in color to ensure full

10  communication is communicated in the scanned copy. Scanned color documents will be provided

11  in JPG file format.

12         **A.**      **Unitization of Paper Document.**

13         To the extent practicable, hard copy Documents shall be produced in the manner in which

14  those Documents were kept in the ordinary course of business.

15         **B.**      **Identification.**

16         Where a Document or group of Documents has an identification spine, "post-it note," or

17  any other label, the information on the label shall be scanned and produced to the extent

18  practicable.

19         **C.**      **Custodian Identification.**

20         The parties will utilize reasonable best efforts to ensure that paper records for a particular

21  custodian or department level custodian, which are included in a single production, are produced

22  in consecutive Bates stamp order.

23         **D.**      **Metadata.**

24         The metadata associated with each hard copy Document need only identify the Bates

25  number, the custodian associated with that hard copy Document, and any Confidential

26  Designation or Redaction applied to that Document.

27  **III.**     **PRODUCTION OF "ESI"**

28         **A.**      De-NISTING and System Files: ESI productions shall be de-NISTed using the

industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The parties may mutually agree upon any additional file types that can be excluded from review and production. A producing party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with respect to any productions made prior to the date of this Order.

If a party excludes from review a standard, readable, and reviewable file type not within the industry standard, that party must disclose such an exclusion to the other parties.

**B.**      Native Files: Certain file types, such as presentation application files (e.g., MS PowerPoint), spreadsheet application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced in native format, the producing party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced.

**C.**      **Metadata Fields and Processing,**

1.      ESI shall be processed in a manner that preserves the source native file and the metadata listed in Appendix 2, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order. Time-zone metadata shall be processed and standardized to the Universal Time Code (UTC).

2.      **Hidden text.** ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon reasonable request, a producing party will produce files with any such information in native format.

3.      **Compressed Files and Encrypted Files.** Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

4. **Metadata and Coded Fields.** ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2. This Order does not create any obligation to create or manually code fields that are not automatically rendered or generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate, where reasonably available, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. Where reasonably available, these fields should be populated for all produced ESI, as well as paper Documents converted to electronic form.

## IV.   DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. To the extent there are any dynamic databases (e.g., SQL and SAP) for which one party maintains that document extraction would be substantially burdensome and/or the extracted format is not usable, the parties will meet and confer to discuss to determine the most reasonable form of production based on the specific circumstances. If one or more other formats of electronically-stored information come to light that due to their complex nature may not be appropriate for production as TIFF images or as Native files, the parties will meet and confer in good faith to discuss a mutually agreeable production format or formats. Prior to any such meet and confer, Defendant will provide sufficient information to enable the Plaintiffs to evaluate the best method and format of production, which may include such information as the database or data store name, business purpose, database or data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator,

programmer and user manuals. If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

## V.    PROPRIETARY OR SPECIAL SOFTWARE

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format.

## VI.    RESPONSIVENESS, PRIVILEGE & REDACTIONS.

To the extent that a party reasonably determines that e-mail or related attachments that are responsive to a document request are not discoverable because they are subject to a Privilege, the party shall produce a log listing the e-mails or attachments.

### A.    Redactions:

The parties agree that where ESI items need to be redacted, they may be produced solely in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action. The Producing Party shall produce the redacted file in the reasonably useable form or shall produce the redacted copy in native format. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video), the producing party may produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file.

### B.    Printing Specifications for Excel and PowerPoint files:

If the items redacted and partially withheld from production are PowerPoint-type presentation decks or Excel-type spreadsheets as addressed herein and the native items are also withheld, the entire ESI item must be produced in TIFF format, including unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

Excel Print to TIFF Options
- Unhide columns and rows
- Unhide worksheets
- Autofit columns and rows, settings to be over by columns first and, then down by rows
- Wrap text
- Print gridlines
- Do not apply Autofilter
- Display headings
- Display comments
- Header and Footer filename field handling: Show field code

PowerPoint Print to TIFF Options
- Print notes pages
- Print hidden slides
- Print comments

1.     The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content. If the content is a voice or audio recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content. For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data. A document's status as redacted does not relieve the producing party from providing all of the unredacted metadata required herein.

C.     **De-duplication and Document Families:**

1.     A producing party shall not be required to search for or produce more than one identical copy of responsive documents absent a showing of good cause that the production

1    of such additional identical copies is necessary. The producing party need only produce a single

2    copy of a particular ESI item, and may de-duplicate ESI vertically by custodian, or horizontally

3    (globally) across the population of records. Duplicates shall be identified by using industry

4    standard MD5 or SHA-1 hash values, or other generated hash values upon notice given, only to

5    create and compare hash values for exact matches. The resulting hash value for each item shall be

6    reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a producing

7    party elects to de-duplicate globally, the producing party shall identify custodians who were in

8    possession of a de-duplicated document in the AllCustodian metadata field specified in Appendix

9    2. This means that the field "AllCustodian" will be populated showing all custodians who had a

10   copy of the same document which is not being produced because of deduplication.

11           2.      De-duplication shall not break apart families and shall be performed at a

12   family level. A document and all other documents in its attachment range, emails with

13   attachments and files with extracted embedded OLE documents all constitute family groups.  If

14   any member of a family group is produced, all members of that group must be also be produced

15   or else logged and no such member shall be withheld from production as a duplicate. A duplicate

16   or a document will not be removed as a duplicate if one version of it includes an attachment while

17   another version does not include an attachment.

18       **D.      Load Files:**

19           The data load file should be in standard Concordance format (.DAT). The .DAT file shall

20   contain a relative path to the corresponding Native file.

21   Concordance Data Load Files:

22           The data load file should use standard Concordance delimiters:

23               • Column - ¶ (ASCII 182);

24               • Quote - þ (ASCII 254);

25               • Newline - ® (ASCII 174).

26               • The first line of the .DAT file should contain the field names arranged in

27                 the same order as the data is arranged in subsequent lines.

28               • All date fields should be produced in mm/dd/yyyy format, if possible.

- All produced attachments should sequentially follow the parent Document/email.

Sample Concordance .DAT Load File:

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ

þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\001\ABC000001.t

tþþABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\ABC000002.txtþ

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

1

**APPENDIX 2:  ESI METADATA AND CODING FIELDS**

2      General ESI production requests under Federal Rules of Civil Procedure 34 and 35 shall

3  not include metadata absent a showing of good cause, except as listed in the chart below, to the

4  extent such metadata fields exist associated with the original electronic Documents and are

5  automatically generated as part of the electronic data discovery process.  Any ambiguity about a

6  metadata field should be discussed with the receiving party prior to processing the subject ESI for

7  production.

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| Custodian | Name of person from whose files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | Size (in kilobites) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| SourceParty | Name of entity or party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |

---

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows: Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above. Outlook Appointments populated with 1st occurrence of **Start Date** or **Date Last Modified**. Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created**. |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created |

| Field Name | Field Description |
|---|---|
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| FileName | The filename of the source native file for an ESI item |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Redaction Reason | The reason for the redaction. If more than one reason, separate by semi-colons. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable.  Otherwise, blank. |

Dated: November 22, 2022      Respectfully submitted,

By:    */s/ Douglas I. Cuthbertson*
　　　 Douglas I. Cuthbertson (*pro hac vice*)
　　　 dcuthbertson@lchb.com
　　　 LIEFF CABRASER HEIMANN
　　　 & BERNSTEIN, LLP
　　　 250 Hudson Street, 8th Floor
　　　 New York, NY 10013
　　　 Telephone: (212) 355-9500
　　　 Facsimile: (212) 355-9592

　　　 Michael W. Sobol (SBN 194857)
　　　 msobol@lchb.com

STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION ("ESI") AND HARD COPY

1    Ian R. Bensberg (*pro hac vice*)
     ibensberg@lchb.com
2    LIEFF CABRASER HEIMANN
     & BERNSTEIN, LLP
3    275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339
4    Telephone: (415) 956-1000
     Facsimile: (415) 956-1008
5
6    Hank Bates (SBN 167688)
     hbates@cbplaw.com
7    Lee Lowther (*pro hac vice*)
     llowther@cbplaw.com
8    Courtney E. Ross (*pro hac vice*)
     cross@cbplaw.com
9    CARNEY BATES & PULLIAM, PLLC
     519 West 7th St.
10   Little Rock, AR 72201
     Telephone: (501) 312-8500
11   Facsimile: (501) 312-8505

12   *Attorneys for Plaintiffs James Newlands, Alicia
     Nickerson, and Christy Emerson*
13
              By:    _/s/ David R. Singh_____
14                   David R. Singh (Bar No. 300840)
                     david.singh@weil.com
15                   Amy Tu Quyen Le (Bar No. 341925)
                     amy.le@weil.com
16                   WEIL, GOTSHAL & MANGES LLP
                     201 Redwood Shores Parkway, 6th Floor Redwood
17                   Shores, CA 94065-1134
                     Telephone: (650) 802-3000
18                   Facsimile: (650) 802-3100

19                   David Yohai (*pro hac vice*)
                     david.yohai@weil.com
20                   Blake Steinberg (*pro hac vice*)
                     blake.steinberg@weil.com
21                   WEIL, GOTSHAL & MANGES LLP
                     767 Fifth Avenue
22                   New York, NY 10153
                     Telephone:(212) 310-8000
23                   Facsimile: (212) 310-8007

24                   *Attorney for Defendant Philo, Inc.*
25
26
27
28

- 4 -

**ORDER**

Pursuant to stipulation, IT IS SO ORDERED.

DATED:  11/29/2022

Hon. Haywood S. Gilliam, Jr.
United States District Judge

- 5 -